## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **COSTA DORADA APARTMENT CORP., COSTA DORADA BEACH RESORT CORP., CARLOS RAFAEL FERNÁNDEZ RODRÍGUEZ, IRIS MYRNA CANCEL LUGO AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; TIENDAS PEPE DE LUIS, INC, LUIS DELGADO MARQUEZ, MARGARITA RODRÍGUEZ REYES and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; SAN JUAN PROPERTIES, INC., ENSYSA PRODUCTS MANUFACTURING INC., ROLANDO ÁVILA PÉREZ, ELIZABETH CHAMPAÑA GAGNERON AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; LUCERO DE AMOR CORP., RICARDO ARIEL GOYECHEA PABÓN, WILMA IDELIZA PABÓN RODRÍGUEZ, OVIDEO TORRENS CASTRO, RADIO BORINQUEN INC., ÁNGEL MANUEL RIVERA CABÁN, LUIS ROBERTO RIVERA CABÁN, PARIÓ OB-GYN PSC, LUIS EDUARDO PARDO TORO, YMA OSORIO DE JESÚS, UNKOWN HUSBAND AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; SAMUEL ROQUE MORALES, MARÍA MAGDALENA LEAL BARBOSA AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; SAMUEL ROQUE LEAL, ALBERTO ROQUE, TIERRAZO CORP.; CARLOS MANUEL CRUZ BENÍTEZ, MIRTA IVETTE SANTIAGO GONZÁLEZ, AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; ILDEFONSO MARTÍNEZ SANTIAGO, UNKOWN SPOUSE AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; UNKNOWN PLAINTIFFS.**<br><br>Plaintiffs, | **CLASS ACTION**<br><br>CIVIL NO. _____<br><br>COMPLAINT FOR: TRUTH IN LENDING REAL ESTATE SETTLEMENT PROCEDURE ACT, REGULATION X (RESPA), TRUTH IN LENDING ACT - REGULATION Z (TILA), EQUAL CREDIT OPPORTUNITY ACT - REGULATION B (ECOA), FAIR AND ACCURATE CREDIT TRANSACTIONS (FACT), FAIR CREDIT REPORTING ACT - REGULATION V (FCRA). FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), CONSUMER CREDIT PROTECTION ACT (15 U.S.C § 1601-1693R), TRUTH IN LENDING ACT (TILA), (15 U.S.C. §1666-1666J), FAIR CREDIT BILLING ACT (FCBA) (15 U.S.C. § 1601-1667). UNIFORM COMMERCIAL CODE (UCC), SUPLEMENTAL JURISDICCTION.<br><br>**DEMAND FOR JURY TRIAL** |

vs.

**BANCO POPULAR OF PUERTO RICO, SCOTIABANK OF PUERTO RICO, BANCO SANTANDER DE PUERTO RICO, ISLAND FINANCE CORPORATION, ORIENTAL BANK PUERTO RICO, WM CAPITAL PARTNERS 53 LLC, LSREF2 ISLAND HOLDINGS, LTD., INC., HUDSON PUERTO RICO LLC; FIRSTBANK DE PUERTO RICO, V&R ENTERPRISES S.E., JOSÉ RAFAEL RODRÍGUEZ COLÓN, IRMA V. RODRÍGUEZ COLÓN, JOSÉ RODRIGUEZ NIEVES, JOSÉ MOLINA VARGAS, CONDADO 3 CR LLC, PR ASSET PORTFOLIO 2013-1 INT, LLC; PRLP 2011 HOLDINGS, LLC, PRLP PROPERTIES I, LLC, SHORELINE CAPITAL PARTNERS, LLC, SOLAMAR MANAGEMENT, LLC, GURABO MEMORIAL INC., GUADALUPE CALDERÓN VICENTE, VIDAL PÉREZ COTTO, MANUEL ARROYO ARROYO, GILBERTO PAGÁN ACOSTA, UNKOWN DEFENDANTS, UNKOWN INSURANCE AGENCIES,**

Defendants.

## CLASS ACTION COMPLAINT

**TO THE HONORABLE COURT**:

**COME NOW,** the Plaintiffs, through their undersigned legal counsels and respectfully **ALLEGE**, **STATE** and **PRAY** as follows:

### I.   JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the instance case arises under federal law, to wit; Consumer Credit Protection Act (15 U.S.C § 1601-1693r), Truth in Lending Act (TILA), (15 U.S.C. §1666-1666j), Fair Credit Billing Act (FCBA) (15 U.S.C. § 1601-1667). TRUTH IN LENDING REAL ESTATE SETTLEMENT PROCEDURE ACT, REGULATION X (RESPA), TRUTH IN LENDING ACT - REGULATION Z (TILA), EQUAL CREDIT

OPPORTUNITY ACT - REGULATION B (ECOA), FAIR AND ACCURATE CREDIT TRANSACTIONS (FACT), FAIR CREDIT REPORTING ACT - REGULATION V (FCRA). FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), UNIFORM COMMERCIAL CODE (UCC),

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendant.

Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this district, and Plaintiffs dealt with Defendants, which are in and/or do business in this district. Venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District.

Plaintiffs also seek supplemental jurisdiction on state law claims under Act No. 208 of August 17, 1995, as amended by Act No. 176 of August 31, 1996, as amended by Act 241 of September 19, 1996, as amended by Act No. 1 of December 16, January 1997, and Act 214 of December 31, 1997 known as the "Trade Transactions Law" of the Commonwealth of Puerto Rico, as well as Articles 1802, 1803, 1045, 1417, 1425 and 1054 of the Commonwealth of Puerto Rico Civil Code, Puerto Rico Laws Annotated, Title 31, Sections 5141, 5142, 3018.

## II. PARTIES

Plaintiffs are residents of Puerto Rico and the United States of America, with real estate properties subject to a guarantee for a commercial loan, located in the Commonwealth of Puerto Rico (hereinafter "Puerto Rico").

Unknown Plaintiff is any person with a real estate property located in Puerto Rico subject to a guarantee for a commercial loan, serviced by the Defendants and that can be subject of the allegations contained in the present claim.

Defendants are banks, capitals, funds, financial institutions, mortgage investors, mortgage loan

servicers, etc. dedicated to provide commercial loans with secured guarantees to qualified individuals with offices, branches and subsidiaries in Puerto Rico.

Unknown Defendants are any bank, financial institution and mortgage loan servicer dedicated to provide commercial loans to qualified individuals with offices, branches and subsidiaries in Puerto Rico and that can be liable for the actions alleged in this claim.

### III.   BACKGROUND TO THE COMMERCIAL MORTGAGE CRISIS AND ITS IMPLICATIONS ON COMMERCIAL MORTGAGES

Toward the end of 2007 and throughout 2008, the commercial real estate market collapsed, causing a tailspin that drove the economy into recession.

Because lenders made extravagantly wrong bets on asset-backed securities, they found themselves on the brink of financial collapse and had to be bailed out with $45 billion from the federal government's Troubled Asset Relief Program ("TARP").

As commercial mortgage debtors felt the squeeze of lesser equity value on their residential properties, their borrowing, and subsequently, their purchasing power diminished. Consequently, the average business owner started cutting purchases, expenses, and started to consume less. This tendency reflected negatively on business in the Island in general, and many business owners saw this tendency cut into their revenues, up to the point that operating costs and commercial loan payments guaranteed by mortgages were exceeding sales and revenues. Business owners had two choices: close their doors, or cover their losses by delaying payment of commercial debts, since operating cost avoidance would shut down their businesses faster than delaying payments to bank creditors. It was a classic case of the "lesser evil", as it pertained to maintaining business operations. As it relates to commercial bank creditors, they would rather execute whatever guarantees they may hold against defaulting commercial debtors and drive the business into the ground, than to try to work with beleaguered business owners and find an alternative to outright mortgage execution, be it by loss mitigation, forbearance, reduced interests rates or payments, or other alternatives.

### IV.   NATURE OF THE ACTION

Plaintiffs bring this class action on behalf of themselves and a class of persons ("Class Members") who have been subject to illegal foreclosures and/or sought modifications to their mortgage payments through their mortgage servicers, and/or Defendants.

Plaintiffs contacted Defendants to reduce the loan payments on their commercial loans due to a reduction in revenue, sales, profits and other situations that affected their payment capacity. The Defendants and/or their mortgage servicers represented it would help by submitting Plaintiffs to a loss mitigation process, putting Plaintiffs in a trial mortgage modification program that would become permanent if Plaintiffs made reduced payments during a trial period and/or simply negating Plaintiffs of their right to be qualified for a loan modification or "loan workout"

Despite Plaintiffs complying with Defendant's requests for various documentation, Plaintiffs found themselves hounded by Defendants a few months later for a delinquency, their credit-worthiness ruined, and rejected for permanent loan modification.

Plaintiffs' story is typical. Defendants did not live up to its promises of providing borrowers with reduced loan payments and/or simply submit Plaintiffs to a lengthy loan modification, "loan workout" or Loss Mitigation Process with no result and at the same time filing a foreclosure claim against them. This constitutes dual tracking and is prohibited by law (Regulations under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010). Moreover, consumers emerged from the trial modification in worse shape than they entered it, despite doing everything the Defendants requested of them.

When Plaintiffs began having trouble making their regular loan payments, they contacted the Defendants to find out if they were eligible for a loan modification or "loan workout"
Pursuant to their agreement with Defendants, Plaintiffs and Class Members submitted the requested paperwork and timely making the modified payments during the trial period, when applicable. Consumers that were rejected from permanent modification plans through no fault of their own should find themselves in no worse position than they entered it. Instead, Defendant's failure to honor its agreements and its misrepresentations and omissions about a program enacted to help owners reduce their payments have left Plaintiffs and Class Members financially devastated.

The defendants failed to comply with Federal law by providing mortgage financing as it is but not limited to: Truth in Lending Act (TILA); The Real Estate Settlement Procedures Act (Regulation X "RESPA). Equal Credit Opportunity Act - Regulation B (ECOA). Fair and Accurate Credit Transactions (FACT). Violations of the Debtor Protection Act are a defense against foreclosure.

The defendants or the legal firm hired to collect the debt violated Federal law in the process of collecting debt as they are but not limited to: Fair Credit Reporting Act - Regulation V (FCRA). Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p. Among other.

The defendants or the legal firm hired to collect the debt within five days of the initial communication with the claimant in relation to the collection of the debt did not send a written notice with the content of the amount of the debt; The name of the creditor to whom the debt is owed; A statement that unless the claimant within 30 days of receipt of the notice questions the validity of the debt, or any part thereof, the debt is assumed to be valid by the creditor; A statement that if the claimant notifies the Legal Entity in writing within a period of thirty days that the debt, or any part thereof, is disputed, the Legal Firm will obtain verification of the debt or a copy of a judgment against the Applicant and a copy of such verification or judgment shall be mailed to the applicant by the Legal Firm and a statement that, upon written request of the applicant within thirty days, the Legal Firm shall provide the applicant with the Name and address of the original creditor, if different from the current creditor.

The defendants or the legal firm hired to collect the debt incurred in the conduct of the abusive practices of collecting debts of the creditors, and the debt collectors did not refrain from using abusive practices of collection of debts against the plaintiffs.

The plaintiffs was granted financing without being duly qualified for it, with no possibility of repayment and with a view to executing the properties what is known as ("Predatory-lending"); which constitutes fraud.

The discussion in law has been broad on the issue of granting a consumer financing without being properly qualified for it, with no possibility of repayment and with a view to executing the property what is known as ("Predatory-lending"):

"Predatory lending bills were introduced in Congress aimed at establishing a uniform national standard for predatory lending issues. The "Responsible Lending Act" was introduced by Rep. Bob Ney (OH) and Rep. Paul Kanjorski (PA). H.R. 1295, 109th Cong. (2005). The second bill, the "Prohibit Predatory Lending Act," introduced by Reps. Brad Miller (CA), Mel Watt (NC), and Barney Frank (MA), H.R. 1182, 109th Cong. (2005); is based largely on the North Carolina predatory lending law. N.C. GEN. STAT. § 24-1.1E (2005).

The bills define high-cost loans as loans with points and fees above five percent (HOEPA currently provides for eight percent) and expand the types of loans subject to HOEPA, H.R. 1295, 109th Cong. § 102 (2005); H.R. 1182, 109th Cong. § 2 (2005); but the Miller-Watt-Frank bill also includes yield-spread premiums to mortgage brokers and the maximum potential prepayment penalty in the definition of points and fees. H.R. 1182, 109th Cong. § 2(c) (2005). Another key difference is that the Ney-Kanjorski bill preempts state law and replaces it with a federal standard, while the Miller-Watt-Frank bill does not seek to preempt state law."

The Commonwealth Court Action concerns suits for mortgage foreclosure and collection of monies owed by Defendants to Plaintiffs. Plaintiffs have alleged and affirmed the Defendants noncompliance and violations of "Truth in Lending Act", Regulation Z of such (TILA), Real Estate Settlement Procedures Act, Regulation X of such (RESPA), Equal Credit Opportunity Act, Regulation B of such (ECOA), Fair and Accurate Credit Transactions (FACT), Gramm-Leach-Bliley Act (GLBA), among others. Either the Defendants or the firm hired for debt collection did not comply with federal law, to wit; Fair Credit Reporting Act, Regulation V of such, and the Fair Debt Collection Practices Act (FDCPA). Defendants <u>failed</u> to notify Plaintiffs with a written notice with the debt amount, or the creditor to whom it was due, or provide to Plaintiffs a request that the written debt notice be answered in a 30 day period, or that Plaintiffs could contest the validity of the debt claim in whole or in part, neither did the firm obtain verification that the debt was due, and forward said verification, be it a final and firm court sentence or other document, to Plaintiffs and did not provide Plaintiffs with the name and address of the original creditor, if different from Defendants. Violations to TILA, are an invokable defense against a mortgage foreclosure. Thus, federal questions lie at the

heart of this action.

The economic depression in Puerto Rico and the government fiscal crisis have created the ideal conditions for the arrival of hedge and vulture funds including all sorts of speculators interested in acquiring troubled loans and other credit assets. These financial *corsairs* and *privateers* have acquired government debt and especially bank loan portfolios at discounts of up to 95% of book value. Purchased at fire-sale prices, these investments promise exorbitant returns for these entities descending from Wall Street like *flies*.[1]

The redemption of a litigious credit is the right of a debtor to extinguish a litigious credit which has been assigned or transferred by the creditor (assignor) during the pendency of litigation, by reimbursing the assignee the price paid plus interest accrued from the date of assignment and the related costs. The debtor-defendant has 9 days from the date the assignee claims the litigious debt from him/her, ordinarily when he asks the court to be substituted in place of the former creditor. The redemption ("retracto de credito litigioso" in Spanish) is a legal concept of ancient origin codified in Article 1,425 of the Puerto Rico Civil Code, 31 LPRA § 3950. This legal figure is also codified in the Louisiana Civil Code, Art. 2652.

The redemption of litigious debt is of procedural rather than substantive nature and is premised on the fact that the claimed debt is challenged based on its non-existence, enforceability, illegality or other basis. It serves two principal objectives: to serve as a disincentive for financial speculation and to promote the termination of litigation. The exercise of this right by defendant (debtor, co-debtor or guarantor) extinguishes the claimed debt without a resolution on the merits of plaintiff's complaint or debtor's defenses. A guarantor may redeem the litigious credit based on its right as a surety to avail him/herself of all of debtor's defenses and exceptions as established by Art. 1752, 31 LPRA § 4957, except for the purely personal ones. The redemption of litigious credit allows a defendant to end the litigation together with its uncertainty and the related inconveniences and expenses.

Legal guidance from the Puerto Rico Supreme Court is scarce on the subject. In the case of the

---

[1] Ángel F. Cabán Bermúdez, Esq., C.P.A., The Redemption of a Litigious Credit, https://www.linkedin.com/pulse/redemption-litigious-credit-%C3%A1ngel-f-cab%C3%A1n-berm%C3%BAdez-esq-, visit July 31, 2017.

assignment of loans from FDIC-intervened financial institutions in Puerto Rico, several Puerto Rico Appeals Court panels have followed one opinion from an appellate court from Louisiana which concluded that debtor cannot redeem the credit against the Resolution Trust Corporation (RTC) or its direct assignee since (1) the transaction is not profit-motivated and (2) it would hamper the regulator's ability to perform its statutorily mandated function of managing failed banks.

These opinions are applicable to the FDIC or its direct assignees and do not extend to third-party assignees. Again, the sale of the litigious credit by the FDIC's assignee to a third party is solely motivated by profit, especially when these purchases are made at discounts of 95% of the loan's book value. What kind of market is that for the court to protect? Is that protection extended to second and third tier acquisitions by speculators and vulture funds? Since these acquisitions by third parties are strictly profit motivated and federal regulator participation is virtually non-existent, the defendant's redemption right is applicable. These loan sales at rock-bottom prices by the FDIC's assignees do not hamper the agency's functions. The prices at which these loans are sold could not be lower, even if the redemption right would be allowed.

How many times has the credit to be sold to third parties for a debtor to be able to exercise its redemption right? The sole opinion relied by the different panels of the Puerto Rico Appeals Court suggests that any credit transferred by the FDIC or its assignee is effectively immunized from the redemption right. If that so, why are they selling at such ridiculously low prices?

The redemption of litigious credit is a valuable alternative for any defendant debtor or guarantor in order to prevent speculators from taking advantage of the pressing circumstances of the individual credit concerned. [2]

Defendants <u>failed</u> to notify Plaintiffs with a written notice with the price or debt amount, which has been assigned or transferred, circumventing the redemption of a litigious credit or the right of a debtor to extinguish a litigious credit which has been assigned or transferred by the creditor (assignor) during the pendency of litigation, Plaintiffs haven't the opportunity of the Redemption of a Litigious Credit, reimbursing the assignee the price paid plus interest accrued from the date of assignment and

---

[2] *ib.*

the related costs.

## V. CLASS ALLEGATIONS

Plaintiffs bring this action on their own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following Class:

All persons in Puerto Rico whose loans have been serviced by Defendants and all related actions, have complied with their obligation under a trial loan modification, "loan workout" or Loss Mitigation Process program, have not received a permanent modification pursuant to the loan modification agreement, have been subjected to Loss Mitigation process while a foreclosure claim is being filed against them and/or have been subject to an illegal foreclosure and harmed thereby.

Plaintiffs and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.

This action involves questions of law and fact common to Plaintiffs and all members of the Class, which include:

(a) Whether Defendants breached its contracts and promises with Plaintiffs and the Class Members and their obligations under the EQUAL CREDIT OPPORTUNITY ACT (ECOA) and Regulation B, and the Uniform Commercial Code, Article 9, Part 2, subpart 1, § 9-201 Et. Seq., Part 3 § 9-304 Et. Seq. Subpart 1,3, Part 5, Part 6, § 9-610, 9-625, 9-627 and other loan modification programs; including state law.

(b) Whether Defendants breached the implied covenant of good faith and fair dealing in permanent modifications to Class Members.

(c) Whether Plaintiffs and Class Members sustained damages resulting from Defendant's conduct and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

Plaintiffs understand and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or that directly conflict with the interests of the other members of the Class.

Plaintiffs' claims are typical of those of the absent Class Members because Plaintiffs and the Class Members each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein.

This action is brought under Rule 23 because Defendants have acted on ground generally applicable to all members of the Class.

Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations.

Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

Plaintiffs file class-action lawsuits against many mortgage investors and mortgage servicers over alleged foreclosure errors, alleged missing documents, alleged deceptive, ambiguous, misleading and confusing, business practices, mortgage loan modifications, and other matters.

The whole situation is incredibly distressing for everyone involved, including the borrowers, lenders, present owners of the mortgage loans, loan servicers, and many others. Mortgage lenders granted loans, in many cases, based upon realistically optimistic expectations that the borrowers would be able to make the payments for which they agreed to be responsible, and enabled those borrowers to improve their quality of life by gaining their own businesses. Unfortunately, and primarily due to the direction taken by the national economy, things did not work out as expected for many of these loans; and brought us to the tenuous situation where we are today. The mortgage lending process always has been that a prospective borrower identifies a business opportunity and makes a business plan for it, and then applies for a mortgage loan to finance this venture. The mortgage lender either approves the loan or turns it down. A prospective borrower is responsible for using prudence and their own knowledge of their overall financial situation – present and future - in determining how much they should be allocating to pay for the commercial loan, and the mortgage lender has responsibility to a borrower to grant them a loan that they will be able to repay. Mortgage lenders granted loans along the lines that prospective borrowers sought.

Personal financial responsibility of the borrowers appears to be totally overlooked in the

present crisis. The key to assessing any responsibility to a particular mortgage lender or mortgage servicer is did the lender or servicer operate according to nationwide industry standard practices in their origination and servicing of the commercial loans, including their practices in applying payments, assessing late charges, dealing with delinquencies, and in foreclosing on the secured guarantees when other collection methods failed.

An examination of the mortgage lender's or mortgage servicer's standard operating procedures should indicate whether the company do not exhibit good faith, fair dealing, ordinary care, honesty in fact, and not observed reasonable commercial standards in the handling of the mortgage loans under consideration.

Mortgage loans and underwriting factors can truly create a recognizable class. Consider the following: (1) Numerosity –borrowers on foreclosures or troubled loans that have common problems could negotiate collectively with their lender and utilize litigation to resolve their common problems; (2) Commonality –there is common type of commercial loan, and (3) Typicality – Considering the factors discussed, this is a case to be considered typical.

## VI.   REMEDIES UNDER APPLICABLE LAWS AND REGULATIONS

In 2010, the United States Congress approved the "Dodd-Frank Wall Street Reform and Consumer Protection Act," PL 111-203, 12 U.S.C. § 5301, et seq., In order, inter alia, to promote the financial stability of the United States by fostering accountability and transparency of the financial system. To this end, the Consumer Financial Protection Bureau (hereinafter "CFPB") was created, a federal agency that was delegated the authority to regulate everything related to consumer protection in the financial sector.

As part of the general authority delegated to the CPFB, that agency would be in charge of regulating, supervising and enforcing the provisions of the Act.

"The rules and regulations by the CPFB clarify dual tracking protections in § 1024.41(g) The final rule includes revised commentary to § 1024.41(g) that clarifies servicers' obligations with respect to § 1024.41(g)'s prohibition against moving for foreclosure judgment or order of sale, or conducting a sale, during evaluation of a complete loss mitigation application received more than 37 days before

a foreclosure sale. Revised comment 41(g)-3 explains that the prohibitions against moving for judgment or order of sale or conducting a sale may require a servicer to act through foreclosure counsel; that upon receipt of a complete application, the servicer must instruct counsel promptly to take certain steps to avoid a violation of § 1024.41(g);"

"Section 1024.41(g) is intended to protect borrowers by preventing a foreclosure sale from going forward while review of a complete loss mitigation application is pending. The revised commentary clarifies servicers' obligations to protect borrowers from foreclosure when a complete loss mitigation application is pending, even if it may be late in the foreclosure process. The commentary may reduce servicer compliance costs by adding clarity regarding the application of § 1024.41(g) when a foreclosure sale has been scheduled." [3]

Therefore, we respectfully understand that the pattern of evasion by the Defendants to provide the Plaintiffs with the protection that the state and federal law protect, have no place in our system of law, since they pursue the sole purpose of evading their responsibility as creditors to the detriment of the right of the appearing Plaintiffs to protect their property under the current legal order.

We humbly consider that the evasion by the Defendants of its liability is detrimental to the economic situation of the Plaintiffs, since the uncertainty it is experiencing prevents it from stablishing a short-term and long-term financial plan. In turn, offer the Defendants' institution the opportunity to collect the debt in question. That is why we request from this Honorable Court to grant the conclusion of an Evidentiary View to evaluate in detail the qualification of those appearing for the benefits of the aforementioned federal regulations.

Therefore, we understand that this Honorable Court, responding to the call of justice in a relatively new scenario, must conclude that the acts carried out by the Defendants with respect to the controversy of epigraph have consisted in a systematic neglect for the sake of circumventing a mechanism created by legislative will with the intention of safeguarding the right of the Plaintiffs to preserve their property.

---

[3] *See*, Pages 739-740 of 12 CFR Parts 1024 and 1026 [Docket No. CFPB-2014-0033] RIN 3170-AA49 Amendments to the 2013 Mortgage Rules under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z)

## VII.   NEGLIGENCE

The Defendants and/or their authorized representatives have acted negligently in the management of the plaintiffs mortgages.

At all times relevant herein, the Defendants, acting as Plaintiffs' lenders and loan servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiffs and act diligently and fairly in compliance with applicable rules and regulations.

In taking the actions alleged above, and in failing to take the actions as alleged above, Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loans by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loans, filing claims and foreclosing proceedings without having the legal authority and/or proper documentation to do so.

As a direct and proximate result of the negligence and carelessness of the managing of Plaintiffs' accounts, claims and/or foreclosure proceedings by the Defendants, Plaintiffs suffered general and special damages in an amount to be determined at trial.

A.   **Fault of Diligence**

The Defendants were not diligent in properly investigating the state of affairs of the management of Plaintiffs' accounts in the present case.

B.   **Contractual Damages**

The Puerto Rico Civil Code distinguishes between the action of non-contractual damages established in Article 1802 and the derivative of a breach of contract. The latter is established in Article 1054 which provides that "those who in the performance of their obligations incurred in intent, negligence or delinquency, and those who in any way contravene the tenor of those" shall be required to compensate for the damages caused. See, 31 L.P.R.A. Sec. 3018. While the action of non-contractual damages of Article 1802 protects the general duty of diligence necessary for social coexistence, ex contractual action is based on the breach of a duty arising from a prior agreement of wills between the

parties. Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 521 (1998); Freire Ayala, et al. V. Vista Rent-To-Own, Inc., et al., 2006 T.S.P.R. 162. For this reason, the purpose of this type of action is to fulfill the promises to which the parties gave their consent. Soc. De Gananciales, *supra*. *See*, also, J.L. Lacruz Berdejo et al., Elements of Civil Law II, Right of Obligations, 3rd ed., Barcelona, Ed. Bosch, 1994, vol. I, §27, p. 212.

Despite this differentiation between the action of non-contractual damages and the *ex contractu*, the Puerto Rico Supreme Court concluded that both share their essential elements. As in the case of non-contractual action, in the *ex-contractu*, the promoting party must prove the existence of the alleged damages and of the culpable or intentional breach of the contractual obligation. In addition, there must be a cause-effect relationship between non-compliance and consequential damages. Article 1054 Civil Code, 31 L.P.R.A. Sec. 3018. *See also* J. Castán Tobeñas, Spanish Civil and Common Law, 16th ed., Madrid, Ed. Reus S.A., 1992, volume 3, p. 272.

In Camacho v. Catholic Church, 72 D.P.R. 353 (1951), the Puerto Rico Supreme Court recognized for the first time the origin of compensation for mental distress and anguish in an action for breach of contract because it was understood that, according to the circumstances of the case, these could have been foreseen by the defendant and were a necessary consequence of the defendants' non-compliance.

Later, in Pereira v. IBEC, 95 D.P.R. 28 (1967), the Puerto Rico Supreme Court concluded in that case that compensation for the sufferings and mental anguish of the claimants was due to the ruinous state of their homes. Again, the Supreme Court concluded that such damages were foreseeable and resulted from the negligent breach of the defendant with its obligations as a constructor.

Therefore, there is no doubt that in our jurisdiction the compensation of mental suffering and anguish in actions of breach of contract is proper. At present, the prevailing rule is that in an action for breach of contract, compensation for the mental suffering and anguish proved, provided they could have been foreseen at the time the obligation was created and were a necessary consequence of their non-compliance. *See*, Colón v. Glamorous Nails, 2006 T.S.P.R. 16.

By applying this standard from <u>Camacho v. Catholic Church</u>, *supra*, our Supreme Court's determinations regarding the source of compensation for moral damages in actions of breach of contract have rested in the circumstances of each case to determine whether the damage is proven, if the same was foreseeable and if it stems from non-compliance. *See also*, <u>Muñiz Olivari vs. Stiefel Laboratories, Inc</u>. 2008 TSPR 152.

Also, Defendants come obliged under Puerto Rico Civil Code Sections 1802,1803 and 1045 to pay for its gross negligence and recklessness in the mortgage handling and actions against the Plaintiffs in this case.

In the present case, Defendant's action actions have cause material, physical and mental damages to Plaintiffs.

## VIII.   PRAYER FOR RELIEF

The Plaintiffs state that the damages suffered were product of a faulty and / or negligent handling of Plaintiffs' mortgages by the Defendants, their representatives and authorized officials.

Defendants' actions have cause great suffering and emotional distress to Plaintiffs. The Plaintiffs had not been able to live peacefully and quietly since the start of the lawsuits and/or foreclosure proceedings.

The Plaintiffs had mental anguishes and sufferings as a result of the lawsuits and/or foreclosure proceedings brought against them.

Defendants directly or indirectly through them, their loan servicers, employees and representatives, have been continually harassing the Plaintiffs by requiring them pay inexistent or inaccurate arrears, to communicate with them and threatened to foreclose their property.

All these negligent acts have destroyed the spirit and strength of the Plaintiffs. They have caused moral damages; anguish and mental suffering that must be compensated by this Honorable Court.

For all the above-mentioned facts, we understand that under Sections 1802, 1803, 1417, 1425 and 1045 of Puerto Rico Civil Code in force the claimant debt to pay for its gross negligence and recklessness in the mortgage handling and actions of the Defendants in this case.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated pray for

judgment against Defendant as follows:

 A. An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class Members;

 B. Restitution to Plaintiffs and Class Members;

 C. Actual damages for injuries suffered by Plaintiffs and Class Members;

 D. Contractual damages suffered by plaintiff due to Defendants failing to anticipate damages stemming from the negligible execution of his contractual obligations toward the Plaintiffs.

 E. An order declaring the alleged acts and practices of Defendants to constitute a breach of contract and a breach of the covenant of good faith and fair dealing;

 F. An order for Defendants' specific performance of its contractual obligations together with other relief required by contract and law;

 G. Reasonable attorneys' fees and the costs of this action;

 H. Statutory pre-judgment interest;

 I. Award Plaintiff damages against all Defendants, jointly and severally, in an amount no less than $1,000,000,000.00 to be proven at trial together with prejudgment interests, costs and attorney fees.

 J. Such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

**RESPECTFULLY SUMBITTED** this 1st of August, 2017.

*S/VANESSA SAXTON-ARROYO* USDCPR 216509

P.O. Box 191590, San Juan, PR 00919-1590
787-552-6332 / 787-667-8094,
vanessa.saxton@capr.org


*S/GWENDOLYN MOYER ALMA* USDCPR 216202
Vistas del Bosque 216 C/Real Bayamón PR 00956
 gmoyeralma@gmail.com, 787-638-5870